YOUNGBLOOD
ET AL.
*vs.*
FLAGG.

---

## YOUNGBLOOD ET AL *vs.* FLAGG.

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT, FOR THE PARISH OF ST. MARY, THE JUDGE OF THE DISTRICT PRESIDING.

In a marriage settlement made in South Carolina, to which the future husband, and intended wife, were parties, certain slaves were given in *trust* by her father, for the *use* of the wife, and at her death to go to her children, and this act was never recorded in South Carolina, so as to have effect against the creditors of the husband : *Held,* that as there were no creditors during the marriage, at the wife's death, the trust which previously existed for *her use,* was changed, and her trustee held for the use of her children. The slaves were not liable for the husband's debts contracted after the death of the wife, although he came with them to this State, and had them constantly in his possession.

43

WESTERN DIST.　The plaintiffs, Thomas Youngblood, for himself, and as
Sept. 1837.　tutor of his younger brother and sisters, who are all the chil-
　　　　　dren of General William Youngblood, made opposition to the
YOUNGBLOOD
ET AL.　seizure of twenty-three slaves, by the defendant, who claimed
vs.
FLAGG.　the right to sell them, under a mortgage from General Young-
　　　blood to himself, for the security and payment for a debt.
The mortgage bears date in April, 1832.

The plaintiffs allege, they inherited the largest portion of
said slaves, from their deceased mother, being her separate
property, as fixed by a marriage settlement, made in the state
of South Carolina, between their father and mother on the eve
of marriage, in 1800. This act settled in trust several of the
slaves now claimed, and their increase, for the use of Mrs.
Youngblood during her life, and at her death they were to go
to her children. The act of settlement further stipulated,
that these slaves were not to be liable for the husband's debts;
but, by a law of South Carolina, marriage settlements, etc.,
in order to have effect against third persons, were required to
be recorded in the office of the Secretary of State, within
three months from their date. This act was not recorded
within that time.

It is further shown, that Mary Rebecca Youngblood, one
of the plaintiffs, inherited the slaves Jenny and her four chil-
dren, under the will of her aunt, which was made and
executed in South Carolina, in 1819 ; that Harry, another
of said slaves, was bequeathed to one of the other plaintiffs
by this aunt, under the same will.

The plaintiffs, finally allege, and show, that none of said
slaves under seizure, ever belonged to their father, who had
no authority to mortgage them ; that General Youngblood
removed with them, bringing with him the slaves in ques-
tion, from South Carolina, to this State, in 1829, where they
have continued to reside. They pray that said slaves be
declared their property, and returned to them, and that they
be quieted in their possession.

The defendant pleaded a general denial ; he averred
specially, that the marriage settlement between General
Youngblood and wife, in which a portion of these slaves are

WESTERN DIST.
*Sept.* 1837.

YOUNGBLOOD
ET AL.
*vs.*
FLAGG.

settled in trust on the wife and her issue, is to be taken and deemed in fraud of creditors of the husband; it not being recorded according to the laws of South Carolina; that if said slaves originally belonged to the wife, they became vested in the husband by their marriage, agreeably to the laws of South Carolina; and the latter had been long in the possession of said negroes, before mortgaging them to the defendant. The defendant further avers, that if the will, under which a portion of these slaves are claimed, was ever legally made in South Carolina, it was never legally proved and admitted to record in this State, and can have no effect until it is so proven and recorded.

Upon these pleadings and issues the case was tried.

The marriage settlement between the father and mother of plaintiffs, was produced in evidence, made and certified in due form. It was dated in November, 1800, and recorded the 9th June, 1801, about seven months afterwards. A statute of South Carolina, passed in 1785, regulates the effect of marriage settlements, and other similar acts, as follows:

"1. An act to oblige persons interested in marriage deeds and contracts, to record them in the secretary's office, dated January 3d., 1785."

"2. That all marriage contracts or deeds of settlement, which shall hereafter be entered into, for securing any part of the estate, real or personal, in this state, of any person or persons whomsoever, shall *within three months* after the execution thereof, be duly proved, and in like manner to be recorded, except such as shall be recorded or lodged in said office."

The will of Rebecca Mickell, the aunt of the plaintiffs, under which a portion of the negroes were claimed, together with the last wills and testaments of Mrs. Youngblood and Moses Singleton, her father, all duly admitted to probate in South Carolina, were produced in evidence, in support of the plaintiffs' claim.

The defendant exhibited his mortgage, and called several witnesses to prove General Youngblood's embarrassed condition; and also showed that he came to Louisiana, so far back

WESTERN DIST.
Sept. 1837.

YOUNGBLOOD
ET AL.
vs.
FLAGG.

as 1829, with the slaves in question, and settled in Attakapas, as a sugar planter, and exercised all the prerogatives of ownership during this time, and before he left South Carolina.

The district judge was of opinion, the plaintiffs fully made out their title to all the slaves ; but that it appeared from some of the evidence, General Youngblood had a life estate in two of them, which was liable for his debts.

Judgment was rendered, decreeing the said slaves to the plaintiffs, and annulling defendant's mortgage.

The defendant appealed.

*Lewis* and *Bowen* for the plaintiffs.

1. The several wills which constitute plaintiffs' title to part of the slaves claimed, were all regularly admitted to probate, and executed in South Carolina, according to the laws of that state, and by those laws vested the property of said slaves in plaintiffs, and their titles so vested must be respected and enforced by the courts of Louisiana. 1 *Martin, N. S.*, 530–1.

2. The marriage settlement relied on by plaintiffs as their title to another part of the slaves claimed, was a deed of trust, by which the legal title to the property was vested in ——— Singleton, until the death of plaintiffs' mother, in 1823, by which event, the legal and equitable title both vested in plaintiffs, and by the laws of South Carolina, could not thereafter be divested by any act of their natural guardian, nor could the same property be affected by him in Louisiana, without pursuing the formalities prescribed by law, in relation to the property of minors. *Louisiana Code*, 3269.

3. There is no law requiring persons removing to Louisiana from another state, to record their titles to property brought with them. 1 *Martin, N. S.*, 528.

4. If such recording were necessary in the case of persons of full age, it cannot be applicable to minors when complaining of the acts of their natural tutor, who brought them and their property to the state, and controls them and it as he choses.

5. If the marriage settlement were not good, as to credi- WESTERN DIST.
tors who became so before it was recorded, still it is good as *Sept.* 1837.
to subsequent ones.

YOUNGBLOOD
ET AL.'
*vs.*
FLAGG.

*Caillet, contra.*

*Martin, J.*, delivered the opinion of the court.

The defendant is appellant from a judgment, which sustains the opposition of the plaintiffs to the execution of an order of seizure and sale, which he had obtained on a mortgage given him by William Youngblood, their father. Part of the property mortgaged, consisted of slaves, owned by the defendant's mother before her marriage, and conveyed in trust by an act of settlement, to which the future husband was a party. The trust is for the use of the grantee, until the celebration of the marriage and during its continuance, and for the use of the issue of said marriage at her death, etc. etc.

The defendant contended, that the act of settlement is void, as fraudulent in regard to posterior creditors, because it was not duly recorded, as required by the laws of South Carolina, under which it was made, within three months after its date. This is the fact, but it does not appear that the husband had any creditor during marriage and before the death of the wife, at which period the trust which had previously existed for her use, was changed, and her trustee held for the use of the plaintiffs, her children. The right which they thus acquired, became then fixed and irrevocable. Their father could not affect it by any contract of his; neither could any of his creditors consider as his property, slaves to which he never had any right, while that of the wife had ceased and become vested in the plaintiffs, who are her children.

It does not appear, that the mortgagor ever had any claim to the slaves, which constituted the remaining part of the property mortgaged.

The mortgagor came to this state from South Carolina with the plaintiffs, and the slaves in question, twelve years

*In a marriage settlement made in South Carolina, to which the future husband, and intended wife, were parties, certain slaves were given in trust by her father, for the use of the wife, and at her death to go to her children, and this act was never recorded in South Carolina, so as to have effect against the creditors of the husband: Held, that as there were no creditors during the marriage, at the wife's death the trust which previously existed for her use, was changed, and her trustee held for the use of her children. The slaves were not liable for the husband's debts, contracted after the death of the wife, although he came with them to this state, and had them constantly in his possession.*

after the death of his wife, and the slaves were not mortgaged until about three years after his arrival. The slaves were never in his possession as husband of the plaintiffs' mother ; and during the time he was in possession of them after her death, he held them in their right. His possession, therefore, could not authorize any one to consider it as giving him any additional credit.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.